Opinion issued August 15, 2002







 







In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00873-CR






COURTNEY MONIQUE TUCKER, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the County Criminal Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 1055601






O P I N I O N


 A jury convicted appellant of theft of property worth over $500, but less than
$1,500. The court assessed punishment at confinement for 240 days in county jail
and a fine of $1,500. In six points of error, appellant contests the legal and factual
sufficiency of the evidence. We affirm.

Background 

 The theft occurred on April 21, 2001, at the Sharpstown Mall Foley's store in
Houston. Appellant's mother, Vivian Tucker, (the mother) carried clothing priced at
$961.99 out of the store without paying for the merchandise. Much of the activity
surrounding the theft was captured by the store's surveillance cameras. We have
reviewed the videotapes that were introduced into evidence and played for the jury. 
 Narvin Jack, a Foley's loss-prevention officer working on the store floor, first
observed the mother drop some clothes in the store and leave to move a car. This
activity seemed suspicious to Jack. He then observed appellant and Mary Thompson
moving through various departments with several items of merchandise. The two
women then took a seat in the ladies shoes section and were joined briefly by the
mother who had returned to the store. Neither appellant nor her mother carried a
purse, and this also seemed suspicious to Jack.

 After a brief conversation, the mother left and selected an armload of clothing. 
She placed the clothes on a display-table near an exit to the parking lot. The mother
then went about selecting a second armload of clothes. Appellant and Thompson
passed the mother in the store again. Appellant and her mother appeared to speak
briefly and gestures were exchanged.

 Appellant and Thompson eventually moved toward an exit and placed the items
they had collected on another display-table located across an aisle from the table
where the mother had earlier laid her first load of clothes. The mother, carrying her
second armload of clothes, was walking approximately 15 feet behind the two as they
approached the display-table. The mother stopped at the table containing her first
group of items. While the mother picked up this set of clothes, the videotape shows
appellant and Thompson arranging their clothes and shoes on the display-table across
the aisle. The mother then crossed the aisle and arrived at the display-table
containing the items gathered by appellant and Thompson just as the two were
completing their arranging and beginning to leave. The videotape shows that
appellant and her mother were standing side-by-side, within inches of each other at
this display table for a brief instant before appellant began walking for the door. It
took the mother approximately 10 seconds to pick up the items left by appellant and
Thompson before she advanced to the exit door a few yards away. 

 Foley's loss-prevention officers had been monitoring all three. Several officers
were waiting outside and quickly detained the mother. According to appellant's
testimony, she and Thompson were about 10 feet away when her mother was forcibly
detained behind them. The two began to walk quickly to their right and were then
detained by Jack, who had exited from another door and was walking towards them.

 Appellant testified that she had instructed her mother to stay in the car while
she and her friend shopped because she knew her mother had a habit of stealing
things. Appellant admitted that she was on probation for two robbery convictions and 
had a previous theft conviction. Because she was on probation, appellant was
concerned that her mother's actions might cause her trouble. She told her mother to
go back to the car and later decided to leave the store when she anticipated that her
mother was about to "try to do something stupid." Appellant testified that she did not
realize how close her mother was when she set her clothes down and left. 

Standards of Review

 When evaluating the legal sufficiency of the evidence, we must view the
evidence in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). A
factual sufficiency review requires us to ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Id. at 563.

Ownership for Purposes of Theft Charge

 The charging information names Narvin Jack as the owner of the property
taken out of the Foley's store. In her fifth and sixth points of error, appellant
contends that the evidence is legally and factually insufficient to establish that Jack
is the owner of the property. We address these points first because appellant's other
points of error assume, without conceding, that this issue has been resolved against
her. 

 A person commits theft if he or she unlawfully appropriates property with the
intent to deprive the owner of the property. See Tex. Pen. Code Ann. § 31.03(a)
(Vernon Supp. 2002). The name of the property owner must be alleged in the
charging instrument. See Freeman v. State, 707 S.W.2d 597, 602 (Tex. Crim. App.
1986). An "owner" is a person who "has title to the property, possession of the
property, whether lawful or not, or a greater right to possession of the property than
the actor." Tex. Pen. Code Ann. §1.07(a)(35) (Vernon 1994). "Possession" is
defined as "actual care, custody, control, or management." Tex. Pen. Code Ann.
§1.07(a)(39) (Vernon 1994). 

 The Legislature intended the term "owner" to have an "expansive" meaning in
order "to give anyone with a conceivable connection to the property ownership
status." Freeman, 707 S.W.2d at 603. A store security guard may be an owner of the
company's merchandise for purposes of the theft statute if, at the time the offense is
committed, he had a greater right to possession than the accused. Id.; see also Inman
v. State, 650 S.W.2d 417, 419 (Tex. Crim. App. 1983) (holding that nature of
employment qualified car lot security guard as owner even though title to stolen car
held by unnamed customer).

 Testimony showed that Jack was employed by Foley's as a loss-prevention
officer. It was his job to detect and apprehend those who stole Foley's merchandise. 
Jack testified that he, as a loss-prevention officer, believed he had a greater right of
possession to merchandise than someone who did not pay for it. No evidence
suggested that appellant had any ownership interest in the clothing. Given the
expansive statutory definition for "owner" and the nature of Jack's work, we hold that
the evidence was legally and factually sufficient to support the jury's finding that
Jack was the owner of the property described in the information.

 We overrule appellant's fifth and sixth points of error.

Sufficiency as a Party to the Theft

 Appellant was charged as both a principal actor and a party to the crime. In her
third and fourth points of error, appellant asserts the evidence was legally and
factually insufficient for the jury to convict her as a party to the theft. A person is
criminally responsible as a party to an offense if the offense is committed by his
conduct or by the conduct of another for which he is criminally responsible. Tex.
Pen. Code. Ann. §7.01(a) (Vernon 1994). A person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid
the other person to commit the offense. Tex. Pen. Code. Ann. §7.02(a)(2) (Vernon
1994). We may look to events occurring before, during, and after the commission of
the offense when determining whether one participated as a party, and we may rely
on actions of the defendant that show an understanding and common design to do the
prohibited act. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)
(opinion on rehearing). Circumstantial evidence may be sufficient to show one is a
party to an offense. Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987)
(theft case); Thomas v. State, 915 S.W.2d 597, 599 (Tex. App.--Houston [14th Dist.]
1996, writ ref'd) (theft case).

 The evidence clearly shows that the mother committed theft when she removed
the clothes from the store without paying. Our focus here is whether appellant, acting
with intent to promote or assist the commission of the theft, solicited, encouraged, 
directed, aided, or attempted to aid her mother in committing the offense. 

 Appellant admits that all three women came to the mall together. The evidence
indicates that appellant communicated with her mother several times as both were
selecting items from throughout the store. We have already summarized how
appellant gathered clothes and placed them on a table near an exit just seconds before
her mother picked up the items and ran out of the store. Jack testified, based on his
observations and experience as a loss-prevention officer, that he believed the three
were working together. 

 The jury could conclude, based on this evidence, that appellant intentionally
aided the commission of theft by her mother. Although appellant testified that she
did not intend to aid the theft, the jury, as the exclusive judge of witness credibility,
was entitled to not believe all or any portion of appellant's testimony. See Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). We hold that the evidence was
legally and factually sufficient to support the verdict.

 We overrule appellant's third and fourth points of error.

 In her first two points of error, appellant asserts the evidence is legally and
factually insufficient to uphold her conviction as the principal actor in the crime.
Having already found the evidence sufficient to uphold the conviction under the law
of parties, however, we need not address these points of error.

 We affirm the conviction.







 Michael H. Schneider

 Chief Justice


Panel consists of Chief Justice Schneider and Justices Taft and Radack. 

Do not publish. Tex. R. App. P. 47.