COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-107-CR

 

 

JOSE LUIS CALVO                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.
Introduction








A jury convicted Appellant
Jose Luis Calvo of two counts of aggravated sexual assault and assessed his
punishment at two consecutive sixty-year sentences and a fine of $10,000 on
each count.  In three issues, Calvo contends
that the trial court erred by (1) stacking the two sentences, (2) admitting
medical testimony at punishment from a nurse who was not qualified to render
such medical opinions, and (3) not declaring a mistrial when the prosecutors
used incurable inflammatory argument in their summation at punishment.  We affirm as modified.

II. Background Facts

On January 8, 2004,
fifty-seven-year-old L.M. was drinking beer at her sister=s house when Calvo and L.M.=s nephew, Benjamin, arrived.  At
some point later, L.M. returned to her own home.  Early in the morning of January 9, 2004,
Calvo and Benjamin knocked on L.M.=s door.  L.M. let both men into
the house.  At about 6:00 a.m., Benjamin
left L.M.=s house to
take his wife to work.  He stated that he
would return in five minutes. 

Thereafter, L.M. became
uncomfortable with Calvo, so she locked herself in the bathroom.  When L.M. finally opened the bathroom door,
Calvo head-butted her in the face, fracturing her nose and causing her to
briefly black out and fall to the floor. 
When L.M. awoke, she attempted to fight back, but Calvo pulled off her
clothes and choked her.  For the next
several hours, Calvo sexually assaulted L.M. multiple times.  Eventually, L.M. was able to escape and run
across the street to call 911. 

 

 








III.
Consecutive Sentences

In Calvo=s first issue, he contends that the trial court erred by stacking the
two sixty-year sentences.  In the State=s brief, it concedes that Athe trial court lacked authority to stack Appellant=s sentences.  Accordingly, this
Court should modify the trial court=s judgement to delete that portion ordering Appellant=s sentences to run consecutively and should then affirm the judgment
as modified.@  Therefore, we sustain Calvo=s first issue.

IV. Expert Testimony

In his second issue, Calvo
claims that the trial court erred by admitting medical testimony over objection
at punishment from a nurse who was not qualified to render the medical opinions
she offered at trial, and also contends that the trial court erred by summarily
overruling his objection without conducting a hearing to test the reliability
of Pat McConnell=s opinion
testimony.  See Tex. R. Evid. 702; Jordan v. State,
928 S.W.2d 550, 553-55 (Tex. Crim. App. 1996). 

A. Standard of review








The decision as to whether an
expert witness is qualified to testify is a matter committed to the trial
court's discretion.  Thomas v. State,
915 S.W.2d 597, 600 (Tex. App.CHouston [14th Dist.] 1996, pet. ref'd).  A trial court enjoys wide latitude in
determining whether expert testimony is admissible.  Hernandez v. State, 53 S.W.3d 742, 750
(Tex. App.CHouston [1st
Dist.] 2001, pet. ref=d).  The trial court abuses its discretion when
its decision is so clearly wrong as to fall outside the zone of reasonable
disagreement or when the trial court acts arbitrarily and unreasonably, without
reference to any guiding rules or principles. 
Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990).  A trial court's decision to admit
scientific testimony likewise should not be overturned absent an abuse of
discretion.  Morales v. State, 32
S.W.3d 862, 865 (Tex. Crim. App. 2000); Wyatt v. State, 23 S.W.3d 18, 27
(Tex. Crim. App. 2000).

B. Discussion

In 1996, the Texas Court of
Criminal Appeals held that its Kelly inquiry regarding the admissibility
of scientific evidence was substantially identical to the Daubert inquiry.
 Jordan, 928 S.W.2d at 554, See
Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590‑91,
113 S. Ct. 2786, 2795 (1993); see also Kelly v. State, 824 S.W.2d 568
(Tex. Crim. App. 1992).  If scientific,
technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training, or education may testify
thereto in the form of an opinion or otherwise."  Tex.
R. Evid. 702; Kelly, 824 S.W.2d at 572. 








1.
Reliability of Evidence

The proponent of scientific
evidence bears the burden of demonstrating by clear and convincing evidence
that the evidence is reliable.  Jackson
v. State, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000).  This is accomplished by showing (1) the
validity of the underlying scientific theory, (2) the validity of the technique
applying the theory, and (3) proper application of the technique on the occasion
in question.  Id.; Kelly, 824
S.W.2d at 573.  The Texas Court of
Criminal Appeals has held that the trial court must conduct a hearing outside
the presence of the jury to determine whether the proponent has established all
three criteria.  Massey v. State,
933 S.W.2d 141, 152 (Tex. Crim. App. 1996); Kelly, 824 S.W.2d at 573. 








At trial, Calvo objected to
McConnell's testimony on the ground that the State had not qualified McConnell
as an expert on the subject of the opinions she had offered concerning the HIV
virus, but not on the basis that the State had failed to hold a hearing
regarding whether her testimony was based on a reliable foundation.[2]  To preserve an issue for appeal, there must
be a timely objection that specifically states the legal basis for the
objection.  Rezac v. State, 782
S.W.2d 869, 870 (Tex. Crim. App. 1990); Maldonado v. State, 902 S.W.2d
708, 711 (Tex. App.CEl Paso
1995, no pet.).  Calvo's complaint on
appeal regarding the trial court=s error in failing to hold a hearing to determine the underlying
reliability of McConnell=s testimony
fails to comport with his trial objections; therefore we hold that he has
forfeited this issue for review.  See
Tex. R. App. P. 33.1(a); Chisum
v. State, 988 S.W.2d 244, 250-51 (Tex. App.CTexarkana 1998, pet. ref=d) (holding objection to admission of expert=s opinion without specification of deficiency in reliability of
opinion did not preserve for review issue of reliability of scientific
evidence);  see also Pouncy v. State,
No. 01-01-01048-CR, 2002 WL 31388799, at *2 (Tex. App.CHouston [1st Dist.] Oct. 24, 2003, pet. ref=d) (not designated for publication) (holding objection of AI object to him being in a position to give an opinion on that issue,@ was general objection that did not invoke trial court=s gatekeeper function and failed to preserve error on that
ground).  

2. Qualification of McConnell as an Expert

In the second prong of his
challenge to McConnell=s testimony,
Calvo contends that the trial court erred in overruling his objection to
McConnell=s testimony
because the State failed to qualify her as an expert witness.  We agree, but conclude that the error is
harmless.  








Rule 702 states the various
methods of qualifying a witnessCknowledge, skill, experience, training, or education.  See Tex.
R. Evid. 702.  Ultimately, the
trial court must ensure that those who purport to be experts truly have
expertise concerning the actual subject about which they are offering an
opinion.  Henderson v. State, 77
S.W.3d 321, 324 (Tex. App.CFort Worth 2002, no pet.) citing Broders v. Heise, 924 S.W.2d
148, 152 (Tex. 1996); see also Tex.
R. Evid. 702.

During the course of
McConnell=s testimony,
the State elicited evidence from McConnell regarding HIV and its effects on a
variety of subjects including the interpretation of T-Cell counts in
determining how long a person had been HIV positive, the increase in the
probability of the spread of the disease as a person=s T-Cell count drops, and the likelihood that one could spread the
disease by throwing one=s urine and
feces on another person. 








Although it is generally true
that a licensed registered nurse has more education and training on medical
issues than a layperson, a nursing license does not automatically qualify the
registered nurse as an expert on every medical subject.  Cf. Broders, 924 S.W.2d at 152
(holding licensed medical doctor is not automatically qualified to testify as
expert on every medical question).  It is
the responsibility of the party seeking qualification of a nurse as an expert
to show the special knowledge of the specific matter on which the nurse is to
testify.  See Ventroy v. State,
917 S.W.2d 419, 422 (Tex. App.CSan Antonio 1996, pet. ref'd).  

Here, the only question the
State posed to McConnell in regard to her expert qualifications related to how
long she had worked as a nurse.[3]  Therefore, the State failed to introduce
sufficient evidence to establish that McConnell was an expert qualified to
testify regarding the effects of HIV. 
While McConnell=s job as a
nurse almost certainly requires some knowledge of HIV, there is nothing in the
record establishing that McConnell was qualified as an expert by her knowledge,
skill, experience, training, or education on the effects of HIV.  Under these facts, McConnell did not qualify
as an expert witness regarding the effect of HIV, and we hold it was error for
the trial court to rule otherwise.








Our conclusion requires us to
determine whether appellant was harmed by the trial court's error.  A violation of an evidentiary rule that
results in the erroneous admission of evidence is not constitutional error.  Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).  When a
nonconstitutional error is made during trial, it will be disregarded as
harmless if the error did not affect the substantial rights of the defendant. Tex. R. App. P. 44.2(b); King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  A substantial right is not affected by the
erroneous admission of evidence if the appellate court after examining the
record as a whole, has fair assurance that the error did not influence the
jury, or had but a slight effect.  Johnson,
967 S.W.2d at 417. 

Prior to McConnell=s testimony, Leoonard Chapman, a jail detention officer, testified
that on ten to fifteen occasions, he witnessed Calvo throw feces and urine on
other inmates.  It appears that the State
introduced McConnell=s testimony
regarding the effects of HIV to show that Calvo=s throwing of his urine and feces on other inmates could have put the
inmates at risk to contract the disease. 
However, Calvo himself testified that he learned that he was HIV
positive in June 2004 and that he later threw his urine and feces on another
inmate on November 9, 2004. 

Additionally, the jury heard
evidence that Calvo, who was HIV positive, physically and sexually assaulted
fifty-seven-year-old L.M. in her home. 
He prevented her from escaping, head-butted and hit her repeatedly,
fractured her nose, put his penis in her anus and vagina without her consent
multiple times, urinated on her and bit her inner left thigh.  








Based on the foregoing
testimony, we conclude that in the context of the entire case against Calvo,
the trial court=s error in
admitting McConnell=s testimony
did not have a substantial and injurious effect on the jury's determination of
punishment; thus, the error must be disregarded.  See Tex.
R. App. P. 44.2(b).  We overrule
Calvo=s second issue.

V.
Improper Jury Argument

In his third issue, Calvo
complains that the prosecutor committed reversible error when he stated in
final argument that Calvo Apissed on her and now he is pissing on you@ and when he asked the jury Awhat do you do with a wild animal?@  However, Calvo failed to
object at trial to the prosecutor's argument and, therefore, forfeited his
right to complain about this issue on appeal. 
Tex. R. App. P. 33.1; Threadgill v. State, 146
S.W.3d 654, 660-71 (Tex. Crim. App. 2004); Mathis v. State  67 S.W.3d 918, 926‑27 (Tex. Crim. App.
2002).  Accordingly, we overrule Calvo=s third issue.

 

 

 

 

 

 

 

 








VI. Conclusion

Having sustained Calvo=s first issue, and overruled his second and third issues, we modify
the trial court=s judgment
to delete that portion ordering Calvo=s sentences to run consecutively. 
We affirm the trial court=s judgment as modified.  See Tex. R. App. P. 43.2(b).

 

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON, HOLMAN, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
May 4, 2006

 

 

 

 

 

 

 

 











[1]See Tex. R. App. P. 47.4.





[2]At trial, when McConnell was asked
whether there was a way to measure how far along a person is in their HIV
status, Calvo objected that A[a]s a nurse I don=t think the qualifications have been established for
opinion testimony.@





[3]In response to the State=s questioning, McConnell testified
that she had been employed as a nurse Aprobably more years than you are old.@ 
She also testified that she had been working as a nurse at the Tarrant
County Jail for approximately two and a half years.