Affirmed and Memorandum Opinions filed March 28, 2006









Affirmed
and Memorandum Opinions filed March 28, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00871-CR

____________

 

ROLAND NORTON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 983,159

 



 

M E M O R A N D U M  O P I N I O N

A jury convicted appellant, Roland Norton,
of possession of a controlled substance, namely cocaine, weighing less than one
gram.  See Tex. Health & Safety Code Ann. ' 481.102(3)(D)
(Vernon Supp. 2005) & 481.115(b) (Vernon 2003).  The trial court assessed punishment at 18
months= confinement.  Appellant challenges his conviction in five
points of error.  We affirm.  

Factual
Background








On April 3, 2004, Officers De La Rosa and
Kravetz, two undercover narcotics officers 
with the Houston Police Department, performed surveillance of a
storefront in an area known  for drug
activity.  While parked across the street
in separate vehicles, the officers observed appellant drive into the parking
lot.  Prior to appellant=s arrival, the
officers observed a suspect make what may have been several drug transactions
with other individuals.  When appellant
arrived, the officers observed him park his vehicle and walk up to the
suspect.  The two men spoke briefly, and
then appellant went into the convenience store. 
While appellant was in the store, Officer Kravetz saw the suspect spit
something out of his mouth into his hand.[1]  When appellant returned, Officer De La Rosa
observed the two men make a hand to hand exchange, and then appellant returned
to his vehicle and drove away. 

Officer De La Rosa informed Officer
Kravetz about the hand to hand exchange, and Officer Kravetz followed appellant
in his unmarked vehicle.  Officer Kravetz
observed appellant run two red lights, so he radioed for a marked police
vehicle to stop appellant for the traffic violations.  When the officer in the marked police vehicle
stopped appellant, appellant pulled into the driveway of his apartment complex,
blocking the entrance.  Officer Kravetz
then arrested appellant for running the two red lights and began an inventory
search of appellant=s vehicle. 


When searching the front driver=s side, Officer
Kravetz found a folded white piece of paper sticking up between the right side
of the driver=s seat and the center console.  He pulled out the paper, felt a Abump,@ and opened the
paper to find five rocks individually wrapped in plastic, which later tested
positive for cocaine.  Officer Kravetz
asked appellant if he preferred his vehicle to be towed and impounded or parked
in the parking lot.  Appellant preferred
his vehicle to be parked in the parking lot in his personal parking space, and
Officer Kravetz complied with the request. 


 








Discussion

In five points of error, appellant
challenges his conviction.  Appellant
contends (1) the trial court erred in overruling appellant=s motion to
suppress the cocaine; (2) the trial court erred in allowing the State=s chemist to
testify; (3) the trial court erred by not allowing testimony from a defense
witness about appellant=s history of not using cocaine; and (4)
the evidence is legally and factually insufficient to support the
conviction.  

I.                   
Motion to Suppress








In his first point of error,
appellant contends the trial court erred when it denied his motion to suppress
the cocaine found in his vehicle.[2]  We review the trial court=s ruling on a motion to suppress
evidence under an abuse of discretion standard. 
See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996).  We will not overturn a trial
court=s ruling
on a motion to suppress if the record supports the ruling.  Hill v. State, 902 S.W.2d 57, 59 (Tex.
App.CHouston
[1st Dist.] 1995, pet. ref=d).  At a suppression hearing, the trial judge is
the sole finder of facts.  Arnold v.
State, 873 S.W.2d 27, 34 (Tex. Crim. App. 1993); Hill, 902 S.W.2d at
59.  We give almost total deference to
the trial court=s
determination of historical facts that the record supports, especially when the
trial court=s
findings turn on evaluating a witness=s
credibility and demeanor.  State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  We give the same amount of deference to the
trial court=s ruling
on mixed questions of law and fact if the question is resolved by evaluating
credibility and demeanor.  Id. at
856.  We consider de novo issues
that are purely questions of law.  Id.  If the trial court=s
ruling is reasonably supported by the record and is correct on any theory of
law applicable to the case, the reviewing court will sustain it upon
review.  Villarreal, 935 S.W.2d at
138.  In the present case, the trial
court did not make explicit findings of historical facts.  We, therefore, review the evidence in a light
most favorable to the trial court=s
ruling.  Ford v. State, 158 S.W.3d
488, 493 (Tex. Crim. App. 2005).  We
review de novo the lower court=s
application of the relevant Fourth Amendment standards.  Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).

Police pulled over appellant
and arrested him for running two red lights. 
Appellant stopped his vehicle in the driveway to his apartment
complex.  Officer Kravetz testified the
vehicle needed to be moved out of the driveway, so he conducted an inventory
search of the vehicle.  During the
inventory search, Officer Kravetz found five rocks of a substance later found
to be crack cocaine in between the right side of the driver=s seat and the center console.  Officer Kravetz then testified that, after he
finished the inventory search, he asked appellant whether appellant wished the
vehicle to be towed or parked inside the parking lot.  Appellant wanted the vehicle parked in the
parking lot in his personal parking space. 
Appellant contends the inventory search of his vehicle was unreasonable
under the Fourth Amendment because his car was left at his apartment complex
and not impounded.  

An inventory search is
permissible if conducted pursuant to a lawful impoundment.  See South Dakota v. Opperman, 428 U.S.
364, 372, 96 S. Ct. 3092, 3098B99
(1976).  The first issue we must decide
is whether appellant=s
vehicle was properly impounded.  See
Benavides v. State, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980).  Reasonable cause for impoundment exists when
a vehicle is illegally parked or otherwise impeding other traffic.  Opperman, 428 U.S. at 368B69, 96 S. Ct. at 3097; Benavides,
600 S.W.2d at 811.  Inventory searches are
conducted to protect the arrestee=s
property and the police from claims of theft. 
Opperman, 428 U.S. at 374, 96 S. Ct. at 3099.  








Inventory searches conducted
pursuant to established departmental policy will generally be
constitutional.  See Moberg v. State,
810 S.W.2d 190, 195 (Tex. Crim. App. 1991); Josey v. State, 981 S.W.2d
831, 843 (Tex. App.CHouston
[14th Dist.] 1998, pet. ref=d).  A warrantless search of a vehicle becomes
permissible if the inventory search is part of the routine administrative care
taking function of the police and is not a pretext for an investigatory motive.  State v. Garcia, 801 S.W.2d 137, 140 (Tex.
App.CSan
Antonio 1990, pet. ref=d).  Furthermore, these rules do not prohibit
police discretion made according to standardized criteria based on something
other than suspicion of criminal activity. 
 Colorado v. Bertine, 479
U.S. 367, 375, 107 S. Ct. 738, 743 (1987) (holding policy giving police
discretion to safely park a vehicle rather than impound a vehicle does not make
an inventory search unconstitutional under the Fourth Amendment).  

In the case at hand, Officer
Kravetz arrested appellant and initiated impoundment procedures because
appellant=s vehicle
was blocking the entrance to appellant=s
apartment complex.  After conducting the
inventory search and finding the cocaine in question, Officer Kravetz asked appellant
if he would rather have the vehicle towed or parked.  Appellant argues Officer Kravetz should have
asked appellant whether to park the car in the apartment complex before
conducting the inventory search.  We
disagree.  Police are not required to offer
the arrestee the option of making special arrangements for the vehicle.  Garcia, 801 S.W.2d at 140B41 (citing Bertine, 479
U.S. at 373B74, 107
S. Ct. at 742).  Nor does it make a
difference that an inventory search is conducted prior to the time when an
automobile may be towed.  Daniels v.
State, 600 S.W.2d 813, 815 (Tex. Crim. App. 1980).  Here, because appellant was under arrest, and
appellant=s
detention would involve taking him to the police station and booking him,
leaving the car without a driver, the officer appropriately took measures to
protect the vehicle.  See Josey,
981 S.W.2d at 842.  Even if appellant
wanted the vehicle parked rather than towed, Officer Kravetz parked the vehicle
himself, and to do so, he took custody of the vehicle.  Conducting an inventory search prior to
driving the vehicle was a reasonable way to effectively carry out the officer=s care taking function.  See Perez v. State, 103 S.W.3d 466,
468 (Tex. App.CSan
Antonio 2003, no pet.) (holding officer used his discretion by permitting
arrestee=s vehicle
to be parked and locked rather than impounded because the vehicle was lawfully
in police custody).  We overrule
appellant=s first
point of error.








II.                
Chemist=s
Expert Testimony

In his second point of
error, appellant contends the trial court erred when admitting the testimony of
Houston Police Department chemist, Betsy Mannankara.  Specifically, appellant argues the State
never properly qualified Mannankara as an expert qualified to testify about the
chemical composition of the substance found in appellant=s
vehicle.  Appellant argues Mannankara is
not qualified as an expert because she did not take Aadvanced@ chemistry classes in college.  According to Mannankara=s testimony, during college, she took
introductory level chemistry and organic biochemistry, and she completed a
research project in biochemistry and worked in the biochemistry lab as an
assistant.  She also testified Texas
A&M did not offer any other advanced chemistry classes while she attended.  The State argues Mannankara=s overall resume qualifies her as an
expert to testify about the chemical composition of a controlled
substance.  Specifically, she has a
bachelor=s degree
in biology, she has more than six months of training from the Houston Police
Department (AHPD@), she attended at least three seminars
while working for HPD, she has 40 hours of training with the Drug Enforcement
Administration, and she has 18 months of work experience with HPD as a
criminologist.   

We review the trial court=s decision to admit scientific expert
testimony under an abuse of discretion standard.  Sexton v. State, 93 S.W.3d 96, 99
(Tex. Crim. App. 2002).  If the trial
court=s
decision is within the zone of reasonable disagreement, the trial cout=s ruling will be upheld.  Id. 
The admission of expert testimony is governed by Rule 702 of the Texas
Rules of Evidence.  Tex. R. Evid. 702; Winston v. State,
78 S.W.3d 522, 525 (Tex. App.CHouston
[14th Dist.] 2002, pet. ref=d).  A witness may be qualified as an expert on a
particular matter through a variety of methods, including knowledge, skill,
experience, training, or education.  See
Carter v. State, 5 S.W.3d 316, 319 (Tex. App.CHouston
[14th Dist.] 1999, pet. ref=d).  A witness=s
expertise must be measured against the actual subject matter about which the
expert is offering an opinion.  Roise
v. State, 7 S.W.3d 225, 234 (Tex. App.CAustin
1999, pet. ref=d).  








Even if Mannankara=s chemistry training in college does
not qualify her as an expert to testify about the chemical composition of the
substance found in appellant=s
car, her other training since graduation may qualify her.  Special knowledge, which qualifies a witness
to give expert testimony, can be derived from specialized education, practical
experience, a study of technical works, or a combination thereof.  Wyatt v. State, 23 S.W.3d 18, 27 (Tex.
Crim. App. 2000).  Witnesses may also be
qualified on experience alone.  Carter,
5 S.W.3d at 319B20.  The expert=s
special knowledge should indicate to the trial court that the expert=s testimony will assist the jury in
making inferences regarding fact issues more effectively than the jury could do
unaided by such opinion.  Thomas v.
State, 915 S.W.2d 597, 600 (Tex. App.CHouston
[14th Dist.] 1996, pet. ref=d).  

Since joining HPD,
Mannankara received specific training to test the chemical composition of
controlled substances, she must pass an annual proficiency exam to remain
qualified to do her job, and as she testified, for 18 months prior to
testifying in this case, she used her training approximately eight to nine
times per day, which amounts to over 3,000 times by the time she
testified.  She had also testified on prior
occasions in similar matters as an expert. 
Mannankara clearly does not have an overwhelming amount of education in
testing the chemical composition of alleged controlled substances; however,
that is her primary responsibility for HPD, and she has testified as an expert
in this area before.  Based on the
evidence about her overall training and experience and the subject matter about
which she offered an opinion, the trial court did not abuse its discretion in
permitting Mannankara to testify about the chemical composition of the
substance found in appellant=s
vehicle.  We overrule appellant=s second point of error.  

III.              
Character Evidence








In his third point of error,
appellant contends the trial court abused its discretion when it prohibited
character evidence offered by appellant. 
Specifically, appellant sought to elicit testimony from appellant=s girlfriend that he did not use
cocaine as evidence tending to prove he would not have possessed the
cocaine.  Appellant=s defense at trial was that no
contraband was ever found in his vehicle by police, and police must have
planted it there.  In support of this
defense, appellant provided one witness who testified he never saw the police
remove anything from appellant=s
vehicle, even though the witness admittedly only witnessed a portion of the
events which occurred in front of appellant=s
apartment complex. 

We review the trial court=s decision to admit evidence under an
abuse of discretion standard.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).  If the trial court=s
decision is within the zone of reasonable disagreement, the trial court=s ruling will be upheld.  Id. 
An accused in a criminal case may introduce evidence of a pertinent good
character trait to prove action in conformity with that trait.  Tex.
R. Evid. 404(a)(1)(A); Valdez v. State, 2 S.W.3d 518, 519 (Tex.
App.CHouston
[14th Dist.] 1999, pet. ref=d).  Proof of such good character may be made
through reputation or opinion testimony. 
Tex. R. Evid. 405(a); Valdez,
2 S.W.3d at 519.  Specific instances of
conduct may only be admissible if the character trait is an essential element
of the crime charged.  Tex. R. Evid. 405(b); Biagas v.
State, 177 S.W.3d 161, 175 (Tex. App.CHouston
[1st Dist.] 2005, pet. ref=d).  

Drug use is not an essential
element of the crime of possession of a controlled substance.  Appellant may not, therefore, use specific
instances of drug use; rather, he may only use reputation or opinion testimony
to prove his good character.  The
testimony of appellant=s
girlfriend was not being offered in the form of reputation or opinion
testimony.  Thus, the testimony about
past drug use was inadmissible character evidence.  








Appellant argues this case
is similar to Wade v. State, where the court held evidence of the
accused=s history
of never possessing drugs in the past in a prosecution for possession was a
pertinent character trait and an essential element of appellant=s charged crime.  See 803 S.W.2d 806, 808  (Tex. App.CFort
Worth 1991, no pet.).  Appellant contends
Wade is directly on point because it stands for the proposition that non-use
of drugs is admissible in a possession case. 
The court in Wade, however, decided the issue on the history of
drug possession, not the history of drug use. 
See id. (reciting the record where defendant=s counsel asked a witness about whether
the defendant ever talked about drug users, holding that question does not go
to defendant=s
character, and further holding drug possession is a pertinent character trait
for a possession case).  The facts in Wade
are distinguishable from the facts here because appellant=s witness would have testified about
drug use, not drug possession.  

In another case, the Fort
Worth court of appeals similarly held evidence of the use or sale of drugs was
a pertinent character trait and an essential element of a defense when the
crime charged was possession of a controlled substance.  See Brazelton v. State, 947 S.W.2d
644, 650 (Tex. App.CFort
Worth 1997, no pet.).  In Brazelton,
the defendant was charged with possession of a controlled substance, and the
defense was necessity.  Id. at
646.  The court found the specific
conduct of never using or selling drugs was an essential element of the
defendant=s
necessity defense.  Id. at
650.  Brazelton is also
distinguishable from the facts of this case because appellant never sought or
received any defensive instruction requiring proof of the specific conduct of
non-use of drugs.  

We hold the trial court did
not abuse its discretion when prohibiting appellant=s
witness from testifying about defendant=s
non-drug use.  Accordingly, we overrule
appellant=s third
point of error.                         

IV.             
Legal and Factual Sufficiency

In his fourth and fifth
points of error, appellant contends the State failed to affirmatively link
appellant to the substance analyzed by the chemist, Mannankara.  Specifically, appellant argues the
discrepancies in Mannankara=s
and Officer Kravetz=s
testimony fail to prove the substance allegedly found by Officer Kravetz is the
same substance analyzed by Mannankara. 
Officer Kravetz testified he found individually wrapped rocks and
Mannankara testified she analyzed rocks taken from separate containers.  The State argues the chain of custody was
established and the difference in language by the witnesses was not an issue at
trial because Mannankara clarified what she meant by Acontainers:@ she meant the plastic wrapping around
each of the rocks.  








In a legal sufficiency
review, we view all the evidence in the light most favorable to the verdict and
then determine whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Salinas v. State, 163 S.W.3d 734, 737
(Tex. Crim. App. 2005).  The jury, as the
sole judge of the credibility of the witnesses, chooses whether or not to
believe all or part of a witness=s
testimony.  See Moreno v. State,
755 S.W.2d 866, 867 (Tex. Crim. App. 1988). 
We do not engage in a second evaluation of the weight and credibility of
the evidence, but only ensure the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d). 
Thus, if there is evidence establishing guilt beyond a reasonable doubt,
we are not authorized to reverse the judgment on sufficiency of the evidence
grounds. 

In a factual sufficiency
review, we consider all the evidence in a neutral light and determine whether a
jury was rationally justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  The evidence may
be factually insufficient in two ways.  Id.  First, when considered by itself, evidence
supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt.  Id.  Second, when the evidence both supports and
contradicts the verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable doubt standard could not have been met.  Id. at 484B85.  Our evaluation of the evidence should not
intrude upon the fact-finder=s
role as the sole judge of the weight and credibility of the evidence.  Cain v. State, 958 S.W.2d 404, 407
(Tex. Crim. App. 1997).  In conducting a
factual sufficiency review, we must discuss the evidence appellant claims is
most important in allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).  








When an accused is charged
with possession of a controlled substance, the State must prove: (1) the
defendant exercised actual care, custody, control, or management over the
contraband, and (2) the defendant knew the object he possessed was
contraband.  See Brown v. State,
911 S.W.2d 744, 747 (Tex. Crim. App. 1995); Linton v. State, 15 S.W.3d
615, 618 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d).  Evidence may be direct or circumstantial, and
it must establish the accused=s
connection to the contraband was more than just fortuitous.  Brown, 911 S.W.2d at 747.  Further, proof at the beginning and end of
the chain of custody will support admission of evidence barring a showing of
tampering or alteration.  Stoker v.
State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), disapproved of on other
grounds by Leday v. State, 983 S.W.2d 713, 716 n.2 (Tex. Crim. App. 1998); Durrett
v. State, 36 S.W.3d 205, 208 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).  Any gaps in
the chain go to the weight of the evidence rather than to its
admissibility.  Durrett, 36 S.W.3d
at 208.  Conflicting testimony about the
type of container in which the drugs are placed or found does not amount to a
break in the chain of custody.  Stoker,
788 S.W.2d at 10.  

Officer Kravetz testified he
maintained custody of the contraband once he found it in appellant=s vehicle.  Once he returned to the office, he weighed
the contraband, tagged it in an envelope, and placed it in a locked narcotics
box.  Mannankara did not testify she
retrieved the envelope from the lock box, but she identified her lab number and
initials were on the same envelope previously identified at trial by Officer
Kravetz, and she testified she delivered that envelope to Officer Kravetz on
the day of trial.  Mannankara also
testified she cut open the five rocks from individually wrapped pieces of
plastic to test them and those individually wrapped pieces of plastic are what
she would have termed Acontainers@ in her report.  Based on the testimony from Officer Kravetz
and Mannankara, appellant has not established a break in the chain of custody
that would go to the admissibility of the evidence.  Furthermore, appellant did not provide
evidence of tampering or alteration. 








Appellant also contends his
neighbor=s
testimony about not seeing the police retrieve anything from appellant=s vehicle makes the evidence insufficient
to support his conviction.  The jury is
the sole judge of the credibility of this witness=s
testimony, and it may choose whether or not to believe any part of it.  See Moreno, 755 S.W.2d at 867.  Having found against appellant, the jury
either did not believe this witness=s
testimony or even believed all of it, but also believed the witness did not see
all the events that occurred in front of appellant=s
apartment complex.  We will not second
guess the jury=s
evaluation of this testimony.  

Viewing all the evidence in
the light most favorable to the verdict, we find a rational trier of fact could
have found appellant intentionally or knowingly possessed the cocaine found in
his vehicle.  Therefore, the evidence is
legally sufficient to find appellant guilty of possession of a controlled
substance.  We overrule appellant=s fourth point of error.  Viewing the same evidence in a neutral light,
we conclude the evidence supporting the verdict was not too weak to support the
verdict beyond a reasonable doubt, and the contrary evidence was not so strong
that the beyond-a-reasonable-doubt standard could not have been met.  Therefore, the evidence is factually
sufficient to find appellant guilty of possession of a controlled
substance.  We overrule appellant=s fifth point of error.

Conclusion

Having considered and overruled each of appellant=s five points of error, we affirm the
judgment of the trial court.                              

 

 

 

/s/         John S. Anderson

Justice

 

 

 

Judgment rendered and Memorandum Opinion filed March 28, 2006.

Panel consists of Chief Justice Hedges and Justices Yates and
Anderson (Yates, J. concurs in result only).

Do Not Publish C
Tex. R. App. P. 47.2(b).











[1]  Officer
Kravetz testified many drug dealers keep the drugs they are selling in their
mouth wrapped in small pieces of plastic before selling it.  If the police show up, the drug dealer
swallows the drugs and will later pass the plastic-wrapped drugs through their
body before the plastic dissolves and exposes them to a large quantity of
drugs.  





[2]  The State
argues appellant waived appellate review of this issue because appellant=s trial attorney said, ANo
objection@ when the cocaine was admitted at trial.  The State, however, takes this statement out
of context.  Defense counsel did say, ANo objection,@ but
when reading this entire section of the record, appellant=s counsel was merely clarifying his decision to delay
objecting to the admission of the evidence until the prosecutor finished laying
the chain of custody predicate.  Once
that predicate was laid, appellant=s
counsel promptly objected to the admission of the cocaine and preserved this
issue for appellate review.